**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| WM CAPITAL PARTNERS 85, LLC, | ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) ) | Case No.: _____ |
| Cashman Equipment Corp., Cashman Scrap & Salvage, LLC, Servicio Marina Superior LLC, and James M. Cashman, | ) ) ) ) | |
| Defendants | ) ) | |

## COMPLAINT

WM CAPITAL PARTNERS 85, LLC ("WM Capital Partners"), as assignee of Banc of America Leasing & Capital, LLC ("BoA") brings this action against Defendants for (a) an order directing Defendants to transfer title and interest in vessels and related charter agreements under the terms of certain credit, guarantee, and maritime security agreements (as modified by Defendants' confirmed Chapter 11 plan of reorganization) pursuant to the Commercial Instruments and Maritime Liens Act 24 U.S.C. §§ 31301-3143 *et seq.* and (b) a declaratory judgment for amounts owed and payable to Plaintiff by Defendants under the terms of certain credit, guarantee, and maritime security agreements, as modified by Defendants' confirmed Chapter 11 plan of reorganization.

## PRELIMINARY STATEMENT

1.     WM Capital Partners brings this action as a secured creditor to enforce its rights under the terms of certain credit, guarantee, and maritime security agreements, as modified by Defendants' confirmed Chapter 11 plan of reorganization.

2.     Each of the Defendants filed for bankruptcy protection in June of 2017, roughly six years ago.  Over the course of an eighteen-month Chapter 11 case and reorganization process before the U.S. Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"), the Defendants negotiated and entered into a comprehensive scheme to equitably address the secured claims of their principal secured lenders, including claims held by WM Capital Partners.  This broad compromise was embodied in the terms of a chapter 11 plan, which modified certain provisions of the loan, guaranty, and security agreements between WM Capital Partners and Defendants.  The Bankruptcy Court confirmed this chapter 11 plan in December 2018.

3.     Unfortunately, the Defendants have failed to live up to their end of the bargain.  Under the plan and the Loan Documents (as defined herein), the Defendants were required to pay down their secured claims according to a set amortization schedule and they have failed to do so.  Nor have Defendants consummated vessel sales sufficient to meet their payment obligations.

4.     The Defendants have ignored repeated requests to honor their obligations mandated by the agreements with WM Capital Partners.  Instead, Defendants have insisted that WM Capital Partners (as well as other creditors) wait patiently while Defendants hopefully turn the business around, sell vessels, and ultimately pay WM Capital Partners back the money it is owed.  WM Capital Partners is not required to forego exercise of its property and payment rights in the hope that the Defendants will, someday, fulfill their obligations.  Both the Loan Documents and the chapter 11 plan afford WM Capital Partners both the forum before this Court and the means to enforce its rights.  Accordingly, WM Capital Partners now turns to the Court to vindicate its rights.

5.     As more fully set forth in the Coleman Declaration filed contemporaneously herewith, the Defendants have defaulted under its post-confirmation payment obligations under the Loan Documents and the Plan.  WM Capital Partners brings this action to obtain a judgment

for amounts it is owed and to compel the Defendants to comply with the terms of the Loan Documents and maritime security agreements.

## JURISDICTION AND VENUE

6.     Jurisdiction is conferred on the Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1333, 28 U.S.C. 1367, and 46 U.S. Code § 31325.

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333(1) because this action is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  Likewise, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 46 U.S.C. § 31325(b) because this action seeks to enforce its rights and remedies *in personam* in admiralty against the mortgagor, maker, comaker, and guarantor for an amount of outstanding indebtedness secured by mortgaged vessels.

8.     This Court has subject matter of the remaining claims in this action pursuant to 28 U.S.C. § 1367.

9.     Venue is proper in the within District pursuant 28 U.S.C § 1391(2) because a substantial portion of events took place in this district and under 28 U.S.C. § 1391(3) because CEC and James Cashman are subject to personal jurisdiction here.

## PARTIES

10.     The Plaintiff, WM Capital Partners, is a Delaware limited liability company with offices at 500 W. 5th Street, Suite 1010, Austin, TX 78701.

11.     Defendant Cashman Equipment Corp. ("CEC") is a Massachusetts corporation with a principal place of business located in Boston, Massachusetts.

12.     Defendant Cashman Scrap & Salvage, LLC ("CSS") is a Louisiana limited liability company whose registered agent is located at 9182 HWY 182, Amelia, LA 70340.

13.     Defendant Servicio Marina Superior LLC ("SMS") is a Louisiana limited liability company whose registered agent is located at 527 E. Boston Street, Suite 201, Covington, LA 70433.

14.     Upon information and belief, James M Cashman ("Mr. Cashman") is an individual and is an officer or member of Cashman Equipment Corp., Cashman Scrap & Salvage, LLC, and Servicio Marina Superior LLC.  On information and belief Mr. Cashman resides at 72 Jericho Road, East Dennis, MA 02638.

## BACKGROUND

### A.  *Defendants Are Obligors Under Certain Existing Secured Loans Payable to WM Capital Partners*

15.     The Defendants specialize in the charter and sale of ocean-going and inland barges and tugboats servicing the marine construction, oil and gas, scrap and salvage, and marine remediation industries worldwide.

16.     On information and belief, Defendants currently operate a fleet of eighty-nine (89) vessels, consisting of twelve (12) inland barges, seventy (70) ocean-going barges, four (4) tugs, two (2) floatels, and one (1) schooner, and various items of general and specialized construction equipment, including cranes and related construction equipment and marine pollution and clean-up equipment.

17.     The Defendants provide services in and maintain or have maintained vessels on the U.S. East Coast and Gulf of Mexico, Mexico, Singapore, Australia, the Persian Gulf, West Africa, the Caspian Sea and South and Central America.

18.     WM Capital Partners and CEC are parties to that certain Promissory Note, dated as of August 15, 2014 (as amended and otherwise modified from time to time, and together with all allonges, addenda, exhibits, supplements, schedules and other attachments thereto,

the "2014 Promissory Note"), in the original principal amount of $7,500,000 made by CEC payable to WM Capital Partners, as assignee of BoA.  A copy of the 2014 Promissory Note is attached as Exhibit A to this complaint and is incorporated herein by reference.

19.    WM Capital Partners and CEC are parties to that certain Promissory Note, dated as of July 26, 2012 (as amended and otherwise modified from time to time, and together with all allonges, addenda, exhibits, supplements, schedules and other attachments thereto, the "2012 Promissory Note" and, together with the 2014 Promissory Note, the "Promissory Notes"), in the original principal amount of $10,000,000 made by CEC payable to WM Capital Partners as assignee of BoA.  A copy of the 2012 Promissory Note is attached as Exhibit B to this complaint and is incorporated herein by reference.

20.    Servicio Marina Superior, LLC is a co-obligor under the 2014 Promissory Note and guaranteed the obligations under the 2012 Promissory Note pursuant to a guaranty agreement executed in connection therewith (the "SMS Guaranty").

21.    James M. Cashman guaranteed all obligations under the 2014 Promissory Note and the 2012 Promissory Note pursuant to a personal guaranty agreement (the "James Cashman Guaranty Agreement").  The terms of the James Cashman Guaranty Agreement provide in relevant part that "Guarantor (defined as James M. Cashman guarantees to [WM Capital Partners] the prompt payment and/or performance of all indebtedness, obligations and liabilities of Customer (defined as, collectively, CEC and SMS) owing to [WM Capital Partners], whether direct or indirect,. matured or unmatured, primacy or secondary, certain or contingent, or acquired by or otherwise created in favor of WM Capital Partners, including without limitation  . . . accelerated amounts, . . . attorneys' fees or enforcement and other costs."  James Cashman Guaranty ¶ 1. "Guarantor hereby undertakes and agrees that if Customer does not or is unable to punctually and

completely pay or perform any Obligations for any reason, Guarantor shall . . . punctually pay any such Obligations requiring the payment of money which Customer fails to pay promptly, as and when due."

22.    The 2014 Promissory Note, the 2012 Promissory Note, the various loan agreements, security agreements, guaranty agreements, ship mortgages and other agreements and documents executed in connection with such promissory notes, as modified by the Plan (as defined herein), are hereinafter referred to collectively herein as the "Loan Documents."

23.    CEC owns (1) the U.S. flag barge named JMC 3010, Official No. 1239413 (the "JMC 3010"); (2) the U.S. flag barge named JMC 3011, Official No. 1239414 (the "JMC 3011"); (3) the U.S. flag barge named JMC 2600, Official No. 1239411 (the "JMC 2600"); (4) the U.S. flag barge named JMC 2601, Official No. 1239412 (the "JMC 2601" and together with the JMC 3010, the JMC 3011, and the JMC 2600, the "U.S. Flag Barges"), and the Vanuatu flag barge named the MISS NORA, Official No. 2332 ("the MISS NORA", and together with the U.S. Flag Barges, the "Vessels").

24.    As part of the funding arrangements incident to the 2012 Promissory Note, CEC, as mortgagor, duly executed and delivered to BoA, as mortgagee, the Eighth Amendment and Restatement of First Preferred Ship Fleet Mortgage ("Fleet Mortgage") dated as of June 25, 2014 on the U.S. Flag Barges.

25.    The Fleet Mortgage was duly recorded with the U.S. Coast Guard at its National Vessel Documentation Center on June 26, 2014 and recorded at Book 04-38, Page 150. Recordation of the Fleet Mortgage is evidenced in the abstracts of title issued on the U.S. Flag Barges as of March 29, 2023.

26. All of the acts and things required to be done by 46 U.S.C. § 31322, in order to give the Fleet Mortgage the status of a first preferred ship mortgage, were done or caused to be done, by BoA or by the U.S. Coast Guard.

27. As part of the funding arrangements incident to the 2014 Promissory Note, CEC, as mortgagor, duly executed and delivered to BoA, as mortgagee, the First Preferred Ship Mortgage dated as of August 15, 2014 on the MISS NORA ("MISS NORA Mortgage").

28. The MISS NORA Mortgage was duly recorded with the office of the Deputy Commissioner of Maritime Affairs of The Republic of Vanuatu on August 18, 2014 at Book PM 35 at Page 143, as amended by that Amendment to First Preferred Mortgage, dated December 28, 2018 and recorded on January 25, 2019 in Book PM 40 at Page 14. The MISS NORA Mortgage is a "preferred mortgage" as defined by 46 U.S.C. § 31301(6)(B).

29. All of the acts and things required to be done by 46 U.S.C. § 31322, in order to give the MISS NORA Mortgage the status of a first preferred ship mortgage, were done or caused to be done, by BoA or by the Deputy Commissioner of Maritime Affairs of The Republic of Vanuatu.

30. As part of the funding arrangements incident to the 2014 Promissory Note, CEC, as Assignor, duly executed and delivered the Eighth Amended and Restated General Assignment of Freights and Hire for the U.S. Flag Barges dated as of June 25, 2014 (the "Charter Assignment").

31. On December 31, 2018, WM Capital Partners purchased the debt associated with the Loan Documents, resulting in the assignment (the "Assignment") of the Loan Documents, including the Fleet Mortgage and the MISS NORA Mortgage, to WM Capital Partners.

32. Pursuant to an Assignment of First Preferred Ship Fleet Mortgage (the "Assignment"), executed on May 4, 2021 with an effective date of April 13, 2021, BoA assigned, conveyed, granted, set over and transferred all of BoA's right, title and interest in the Fleet

Mortgage to WM Capital Partners.  The Assignment was recorded by the NVDC on May 11, 2021, at 12:54 PM, in Batch No. 22022000, Document ID No. 2.

33.    Pursuant to an Assignment of First Preferred Mortgage (the "MISS NORA Assignment"), executed on May 4, 2021 and May 12, 2021 with an effective date of April 13, 2021, BoA assigned, conveyed, granted, set over and transferred all of BoA's right, title and interest in the MISS NORA Mortgage to WM Capital Partners.  The MISS NORA Assignment was recorded by the with the office of the Deputy Commissioner of Maritime Affairs of The Republic of Vanuatu on May 14, 2021 at Book PM 42 at Page 79.

34.    The Fleet Mortgage and the MISS NORA Mortgage, as modified by the Plan, secure all obligations, debts and liabilities of the Defendants to WM Capital Partners, including but not limited to the payment of all sums due under the Loan Documents.

### B. Defendants' Confirmed Chapter 11 Plan Modified Certain Provisions of the Loan Documents

35.    On or about June 9, 2017, each of the Defendants filed a Chapter 11 bankruptcy case in the U.S. Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"). *See* Bankruptcy Court Case Nos. 17-12204 (Bankr. D. Mass.) (James Cashman); 17-12205 (Cashman Equipment Corp.); 17-12206 (Cashman Scrap & Salvage, LLC); 17-12207 (Servicio Marina Superior, LLC).  The Bankruptcy Court entered an order directing joint administration of these Chapter 11 cases under the case of Cashman Equipment Corporation, Case No. 17-12205, on June 12, 2017 (such jointly administered Chapter 11 cases, the "Cases").  *See* ECF #20, Bankruptcy Court Case No. 17-12205.

36.    In the Bankruptcy Court's Eighth Interim Order Granting (1) Use of Cash Collateral, (2) Replacement Liens, (3) Additional Adequate Protection and (4) Other Relief [ECF 546, Case 17-2205] (the "Cash Collateral Order"), the Bankruptcy Court found, and Defendants admitted

"[t]here is hereby allowed a claim of [WM Capital Partners] against each of the Defendants in the amount of $12,210,607.57, consisting of principal and interest as of the Petition Date."  Cash Collateral Order ¶ 13.k.  Subject to certain inapplicable exceptions, this allowed claim "is secured by a valid, enforceable, and perfected, first priority lien on and security interest in the [Vessels]. *See id.*  Such liens are "(1) valid, binding, perfected, duly recorded and enforceable liens on and security interests in all of [WM Capital Partners'] prepetition Collateral, and (2) not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, recoupment, counterclaims, defenses, claims, causes of action, impairment or any other kind of challenge under applicable bankruptcy or non-bankruptcy law, in the United States or elsewhere, by rule, in admiralty or in equity.  *See id.*

37.    Each of the Vessels is listed in the Cash Collateral Order as collateral in which WM Capital Partners has a valid, perfected, and enforceable security interest.  *See* Ex. 3 to Cash Collateral Order.

38.    The Bankruptcy Court confirmed a Chapter 11 plan of reorganization (the Modified Third Amended Joint Plan of Reorganization of Cashman Equipment Corp., Cashman Scrap & Salvage, LLC, Servicio Marina Superior, LLC, Cashman Canada, Inc., Mystic Adventure Sails, LLC, and James M. Cashman [ECF #1158, Case No. 17-12205] (the "Plan")) in the Cases by its order of December 14, 2018 [ECF #1254, Case No. 17-12205] (the "Confirmation Order").

39.    Among the plan provisions was a compromise regarding the payment of secured claims against the debtor-Defendants, to include the claims of WM Capital Partners under the Loan Documents.  *See* Plan § 4.1(c).  The Plan modified the payment obligations, accrual of interest, events of default, and exercise of remedies (among other provisions) under the Loan Documents, among others.  *See* Plan § 4.1(c)(i)(13).

40.     Among the obligations under the Plan are specified monthly installment payments to WM Capital Partners for its Allowed Secured Claim.[1]  *See* Plan § 4.1(c)(i)(2).

41.     Failure to make any monthly installment within three business days of such payment being due (or, no more than once annually, failure to make any such payment within three business days after receiving a notice of default from the Lender) constitutes a Default under the Plan. *See* Plan § 4.1(c)(i)(19).

42.     The date of any Default causes the occurrence of the Lender Maturity Date under the Plan.  *See* Plan §4.1(c)(i)(19).

43.     Under the terms of the Plan, "the Corporate Debtors [including CEC, CSS, and SMS] shall pay the Lender on the Lender Maturity Date the unpaid balance (if any) of its Allowed Secured Claim."  *See* Plan §4.1(c)(i)(1).  "If not paid in full on the Lender Maturity Date, each Lender may add to such unpaid balance on a monthly basis (A) simple interest thereon at the Lender Rate, and (B) such Lender's reasonable costs of collecting such unpaid balance, including attorneys' fees and including in any bankruptcy case of any of the Debtors."  *See id.*

44.     The Plan provides for the retention of the liens held by WM Capital Partners on the Vessels under the Loan Documents.  *See* Plan §4.1(d).

45.     The Plan leaves undisturbed any guaranty obligations under the Loan Documents. *See* Plan §4.1(h)

46.     The Plan provides that "[u]pon the occurrence of a Default as to an Allowed Secured Claim, the holder of such Claim shall be entitled to enforce its rights under applicable law in a court of competent jurisdiction in the County of Suffolk, Commonwealth of Massachusetts."

---

[1]     Capitalized terms not otherwise defined herein have the meaning given them in the Plan.

*C. Defendants Are in Default Under the Loan Documents and the Bankruptcy Plan*

47.    On February 28, 2023, WM Capital Partners sent a notice of default and reservation of rights to CEC, a copy of which is attached hereto as Exhibit C to this complaint.

48.    On March 3, 2023, WM Capital Partners sent a payment demand letter to CEC, demanding that CEC pay WM Capital Partners the proceeds, payments or charter hire on account of the Vessels in accordance with the Loan Documents.  A copy of this payment demand letter is attached hereto as Exhibit D to this complaint.

49.    On March 13, 2023, WM Capital Partners sent a second notice of default and acceleration of debt to CEC, CSS, SMS and Mr. Cashman, a copy of which is attached hereto as Exhibit E to this complaint.

50.    WM Capital Partners provided Defendants with an option to transfer title to the Vessels in exchange for extinguishment of the outstanding indebtedness, pursuant to the terms of the Fleet Mortgage and the MISS NORA Mortgage.

51.    Despite multiple amicable demands, the amounts due and owing under the Plan and the Loan Documents have not been paid in full, nor have the Defendants transferred title of the Vessels in accordance with the Fleet Mortgage and the MISS NORA Mortgage, nor have the Defendants assigned all of their rights, title and interest in each of the Charters to WM Capital Partners as provided in the Charter Assignment and Loan Documents.

52.    As set forth above, the Plan and the Loan Documents provide for the recovery of the unpaid balance on the Allowed Secured Claim held by WM Capital Partners, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges.

53.    A Default occurred under the Plan no later than March 16, 2023 upon the expiry of three business days following the Defendants' receipt of notice of the Default on March 13, 2023.

54.    As of July 10, 2023, not less than $12,324,134.93 is due and owing under the Loan Documents, in addition to attorneys' fees and other expenses in amounts to be determined.  The amounts due and owing continue to accrue daily.

## D.  *Defendants Have Judicially Admitted to Defaults Under the Plan*

55.    On April 13, 2023, WM Capital Partners moved in the Bankruptcy Court to reopen the Defendants' bankruptcy cases to enforce the Plan and seek substantially the same relief as sought in this action.  *See* ECF 1770, Case No. 17-12205 (Bankr. D. Mass).  CEC objected to reopening the bankruptcy case, and the Bankruptcy Court declined to reopen the cases, citing in part the availability of other forums and its view of the limited role of the Bankruptcy Court to enforce post-confirmation plans.  Nevertheless, in both their filed opposition and before the Court, the Defendants admitted that they have not been making the payments required under the Plan.

56.    In their opposition to WM Capital Partners Motion to Reopen, ECF 1794, Case No. 17-12205 (the "Debtors' Opposition"), Defendants stated that they had failed to make the payments required under the Plan and had received notices of default from numerous other lenders:

> The Debtors . . . ultimately did not have the cash flow to continue making payments to the Lenders in accordance with the Plan.  The Debtors received declarations of default under the Plan from almost all of the Lenders, including from WM Capital's predecessor in interest Banc of America Leasing & Capital, LLC's ("BofA"), in the first two (2) months of 2021.

> Debtors' Opposition at 6.

57.    Likewise, Defendants admitted to owing WM Capital Partners millions of dollars. *See* Debtors' Opposition at 5 ("As of the date of the Motion, WM Capital is owed approximately $12,000,000").[2]

---

[2]    WM Capital Partners does not concede that $12 million is an accurate or final figure regarding what is owed.  WM Capital Partners reserves all rights to seek all amounts owed under the Plan and Loan Documents, to include attorneys' fees.

58.    At a hearing before the Bankruptcy Court, counsel for the Defendants also judicially admitted that Defendants had failed to comply with the Plan:

THE COURT: But the debtor isn't performing the terms of the plan. Correct?

MR. JEFFERY: Uh, Judge, we are -- we are not performing the strict terms of the plan. No.

Transcript of Hearing before the Bankruptcy Court, May 23, 2023 (the "Hearing Transcript"), at 14, 11:14.

59.    Default under the Loan Documents, as specified above, constitutes an event of default under the Fleet Mortgage, the MISS NORA Mortgage, and the Charter Assignment entitling WM Capital Partners to exercises its rights thereunder.

60.    The Vessels are currently located outside the jurisdiction of this Court. As such, WM Capital Partners brings this again *in personam* against Defendants for all amounts of outstanding indebtedness secured by mortgaged Vessels and to exercise WM Capital Partner's rights under the Fleet Mortgage and the MISS NORA Mortgage.

## COUNT I

### ENFORCEMENT OF PREFERRED SHIP MORTGAGES – 46 U.S.C. § 31325(b)
### (All Defendants)

61.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-58 above as if fully set forth herein.

62.    WM Capital Partners, as the holder and owner of the Loan Documents, as well as the Fleet Mortgage, the MISS NORA Mortgage, and the Charter Assignment, has the right to enforce and collect the obligations evidenced by the Loan Documents, and the Plan, and to enforce the Fleet Mortgage, the MISS NORA Mortgage, and the Charter Assignment in accordance with 46 U.S.C. § 31325.

63.    The Defendants have defaulted under the Loan Documents and the Plan, which constitutes an event of default under the Fleet Mortgage and the MISS NORA Mortgage, entitling WM Capital Partners to exercise its rights and remedies under the Fleet Mortgage and the MISS NORA Mortgage.

64.    Sections 9.2.2, 9.2.5, and 9.3 of the Fleet Mortgage collectively provide that in the event of a default by the Defendants, WM Capital Partners may demand that the Defendants transfer all rights, title and interest of any nature whatsoever in the U.S. Flag Barges to WM Capital Partners.

65.    Sections 4.03, 5.01, and 5.02 of the MISS NORA Mortgage collectively provide that in the event of a default by the Defendants, WM Capital Partners may demand that the Defendants transfer all rights, title and interest of any nature whatsoever in the MISS NORA to WM Capital Partners. Section 5.02 of the MISS NORA Mortgage requires that, upon and during the continuance of any event of default under the MISS NORA Mortgage, the Owner must "execute [the] conveyance of title to the Vessel as Mortgagee may direct." This same section confirms the agreement that "this requirement is subject to a suit for specific performance hereof."

66.    Section 9.6 of the Fleet Mortgage grants WM Capital Partners the right to seek specific performance of, inter alia, any covenant contained therein or in aid of the execution or enforcement of any power granted in the Fleet Mortgage.

67.    Section 4.02 of the MISS NORA Mortgage grants WM Capital Partners the right to seek specific performance of, inter alia, any term contained therein or in the aid of the exercise of any power granted in the MISS NORA Mortgage.

68.    Upon information and belief, CEC currently bareboat charter the Vessels to various entities. Specifically, CEC is a party to the following charters for the Vessels: (1) BARGEHIRE

14

2008 between CEC, as owner, and Boskalis Westminster Contracting Ltd. - Dubai Branch, as charterer, dated January 25, 2023, for the JMC 2600 (the "JMC 2600 Charter"); (2) BARGEHIRE 2021 between CEC, as owner, and Astro Offshore Ship Management PTE Ltd., as charterer, dated July 14, 2022, for the JMC 2601 (the "JMC 2601 Charter"); (3) BARGEHIRE 2021 between CEC, as owner, and McDermott Middle East Inc., as charterer, dated March 4, 2022, for the JMC 3010 (the "JMC 3010 Charter"); (4) Charter Party Agreement CPA-051-2022 between CEC, as owner, and McDermott Arabia Company Limited, as charterer, dated December 1, 2022 (the "JMC 3011 Charter"); and (5) BARGEHIRE 2008 between CEC and Heerema Marine Contractors Nederland SE, as charterer, dated August 24, 2022, for the MISS NORA (the "MISS NORA Charter" and together with the JMC 2600 Charter, the JMC 2601 Charter, the JMC 3010 Charter, and the JMC 3011 Charter, the "Charters").

69.     By letter dated March 3, 2023, WM Capital Partners demanded CEC direct all proceeds, payments, and/or charter hire due or to become due with respect to the Charters to WM Capital Partners pursuant to the Charter Assignment.  Upon CEC's refusal to do so, WM Capital Partners demanded that CEC execute bills of sale transferring title of the Vessels to WM Capital Partners by letter dated March 13, 2023.  CEC again refused.

70.     Wherefore, in light of the Defendants' default of their obligations under the Plan, in accordance with Sections 9.2.2, 9.2.5, 9.3, and 9.6 of the Fleet Mortgage, WM Capital Partners is entitled to an order of this Court compelling the Defendants to transfer all rights, title and interest of any nature whatsoever in the U.S. Flag Barges to WM Capital Partners.

71.     Wherefore, in light of the Defendants' default of their obligations under the Plan, in accordance with Sections 4.03, 5.01, and 5.02 of the MISS NORA Mortgage, pursuant to Section 1142 and Bankruptcy Rule 3020(d), WM Capital Partners is entitled to an order of this Court

compelling the Defendants to transfer all rights, title and interest of any nature whatsoever in the MISS NORA to WM Capital Partners.

72.     Wherefore, in conjunction with the rights upon default afforded WM Capital Partners under the Charter Assignment, WM Capital Partners is entitled to an order compelling the Defendants to assign all of their rights, title and interest in each of the Charters to WM Capital Partners.

73.     Wherefore, Section 11 of the Fleet Mortgage obligates the Defendants' to pay reasonable attorneys' fees, costs, and expenses associated with any and all claims, suits, and demands of any nature whatsoever asserted against or incurred by WM Capital Partners arising out of any manner occasioned by the Fleet Mortgage and the exercise of WM Capital Partners rights thereunder.

74.     Wherefore,, Section 5.05 of the MISS NORA Mortgage obligates the Defendants to pay reasonable attorneys' fees, costs, and expenses associated with any and all claims, suits, and demands of any nature whatsoever asserted against or incurred by WM Capital Partners arising out of the Defendants' breach or default under the Loan Documents and the MISS NORA Mortgage.

75.     Accordingly, WM Capital Partners demands that the Defendants pay all reasonable attorneys' fees, costs, and expenses for this action as required by the Loan Documents, the Fleet Mortgage, and the MISS NORA Mortgage.

Strictly in the alternative, and in accordance with Section 9.7 of the Fleet Mortgage and Section 5.08 of the MISS NORA Mortgage, WM Capital Partners expressly reserves any and all other remedies to which it may be entitled under the Fleet Mortgage, the MISS NORA Mortgage, and in law or at equity.

**COUNT II**

**BREACH OF CONTRACT FOR AMOUNTS OWED UNDER THE PLAN AND LOAN DOCUMENTS – 46 U.S. Code § 31325; 28 U.S.C. § 1367**
**(All Defendants)**

76.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-73 above as if fully set forth herein.

77.    WM Capital Partners, as assignee of BoA, is a Lender under the Plan

78.    Each of the Defendants is bound by the terms of the Plan.

79.    Each of CES, CSS and SMS has failed to make the payments required under the Plan and a Default exists under the Plan as of March 16, 2023.

80.    The occurrence of the Event of Default has caused the occurrence of the Lender Maturity Date under the Plan on March 16, 2023.

81.    The Plan provides that on the Lender Maturity Date the Corporate Debtors [CEC, CSS, and SMS] shall pay the Lender on the Lender Maturity Date the unpaid balance (if any) of its Allowed Secured Claim.  If not paid in full on the Lender Maturity Date, each Lender may add to such unpaid balance on a monthly basis (A) simple interest thereon at the Lender Rate, and (B) such Lender's reasonable costs of collecting such unpaid balance, including attorneys' fees.

82.    The Plan also provides that "all guaranties issued by any Debtor to any Lender shall remain in effect, provided that no payment or other obligation under such guaranties shall be due or deliverable from the respective Debtor unless there is a Default."  Plan § 4.1(h)

83.    Mr. Cashman is an obligor under the Loan Documents pursuant to the James Cashman Guaranty Agreements.  CECs and SMS's failure to pay their Obligations when due triggers his payment obligations under the James Cashman Guaranty Agreement.  See James Cashman Guaranty Agreement ¶ 1.

84.    As of July 10, 2023, not less than $12,324,134.93 is due and owing under the Loan

Documents, in addition to attorneys' fees and other expenses in amounts to be determined.  The

amounts due and owing continue to accrue daily.

85.    A real and justiciable controversy concerning breaches under the Loan Documents

and Plan exists between the parties to this action.

86.    Pursuant to 28 U.S.C § 2201, this court has authority to issue a binding declaration

that will resolve the parties' dispute

87.    Accordingly, WM Capital Partners requests that the Court issue a declaratory

judgment that a default exists under the Loan Documents and Plan and a judgment in favor of WM

Capital Partners in the amount of $12,504,475 plus accrued interest, fees and expenses.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court enter judgment in its favor

as follows:

1.    Enter a final judgment *in personam* against Defendants under Count I of this

Complaint granting WM Capital Partners title to the Vessels, as provided by 46 U.S.C. §§ 31325-

31326 and in accordance with the Fleet Mortgage and the MISS NORA Mortgage, and requiring

Defendants to assign all of their rights, title and interest in the Vessels' respective Charters to WM

Capital Partners;

2.    Enter a final judgment against Defendants under Count II of this Complaint for all

payment amounts due and owing to WM Capital Partners under the Plan and Loan Documents,

including without limitation prejudgment interest, costs, expenses and attorneys' fees as required

by the Loan Documents, the Fleet Mortgage, and the MISS NORA Mortgage; and

3.    Grant WM Capital Partners such other relief which it may deem just and proper.

18

Dated:  July 25, 2023

NIXON PEABODY LLP

*/s/ Ronaldo Rauseo-Ricupero*
Victor Milione (BBO# 548707)
Stephen M. LaRose (BBO# 654507)
Ronaldo Rauseo-Ricupero (BBO# 670014)
John E. Murray (BBO# 706250)
Emily Holt (BBO# 695991)
Exchange Place
53 State Street
Boston, MA 02109
Telephone: (617) 345-1000
vmilione@nixonpeabody.com
slarose@nixonpeabody.com
rrauseoricupero@nixonpeabody.com
jmurray@nixonpeabody.com
eholt@nixonpeabody.com

Trey Rayburn (to be admitted pro hac vice)
MCGUIREWOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, NC 28202-2146
Telephone: (704) 343-2344
trayburn@mcguirewoods.com

Joseph A. Florczak (to be admitted pro hac vice)
MCGUIREWOODS LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8100
jflorczak@mcguirewoods.com

R. Scott Jenkins (to be admitted pro hac vice)
Sara B. Kuebel (to be admitted pro hac vice)
JONES WALKER LLP
201 St. Charles Avenue - Suite 4800
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
sjenkins@joneswalker.com
skuebel@joneswalker.com

*Counsel to WM Capital Partners 85, LLC*